OPINION
{¶ 1} This is an appeal from a verdict of guilty following a bench trial as to three counts of violation of R.C. 2925.05(A)(2) and three counts of violation of R.C. 2925.03 in the Court of Common Pleas of Tuscarawas County, Ohio.
 STATEMENT OF FACTS AND CASE {¶ 2} Appellant's brother, Bryan C. Wilson was also charged with certain criminal activity with his case pending on appeal in 2005-05-1.
 {¶ 3} Through a confidential source, the State believed that Appellant and his brother were engaged in causing large amounts of marijuana to be obtained by Appellant with funds sent by Bryan Wilson from Tuscarawas County to Appellant in New Mexico and shipped to Tuscarawas County for subsequent sale and distribution.
 {¶ 4} Appellant was residing in New Mexico at the times involved in this case.
 {¶ 5} Officer Paul Rossi and an agent connected with the Southeastern Narcotics Task Force made contact with Appellant's brother.
 {¶ 6} According to their evidence, money was obtained in Tuscarawas County from such brother and utilized personally by Officer Rossi to purchase marijuana from Appellant in New Mexico.
 {¶ 7} Tape recordings of Appellant were made by such officer.
 {¶ 8} The drugs were delivered to Appellant's brother.
 {¶ 9} Postal officials also traced and testified as to money orders issued from Bryan Wilson to Appellant.
 {¶ 10} The testimony of Appellant and his brother at trial were in conflict as to the knowing involvement of Appellant as well as being in conflict with prior statements made.
 {¶ 11} Appellant raises four Assignments of Error:
 ASSIGNMENTS OF ERROR {¶ 12} "I. THE DECISION OF THE TRIAL COURT CONVICTING APPELLANT OF R.C. § 2925.05(A)(2) (FUNDING OF DRUG TRAFFICKING — COUNT FOUR OF INDICTMENT) WAS IN ERROR BECAUSE THE INDICTMENT CHARGING APPELLANT OF SAID CRIME WAS FATALLY DEFECTIVE.
 {¶ 13} "II. THE DECISION OF THE TRIAL COURT CONVICTING APPELLANT OF R.C. § 2925.05(A)(2) (FUNDING OF DRUG TRAFFICKING — COUNT FOUR OF INDICTMENT) WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 14} "III. THE DECISION OF THE TRIAL COURT CONVICTING APPELLANT OF R.C. § 2925.05(A)(2) (FUNDING OF DRUG TRAFFICKING — COUNT FOUR OF INDICTMENT), R.C. § 2925.03 (TRAFFICKING IN MARIJUANA — COUNT EIGHT OF THE INDICTMENT), AND R.C. § 2923.01
(CONSPIRACY — COUNT NINE OF THE INDICTMENT) WAS IN ERROR AS THE STATE DID NOT ESTABLISH VENUE AND JURISDICTION IN TUSCARAWAS COUNTY, OHIO.
 {¶ 15} "IV. THE DECISION OF THE TRIAL COURT CONVICTING APPELLANT OF R.C. § 2923.01 (CONSPIRACY — COUNT NINE OF THE INDICTMENT) WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 {¶ 16} The First and Second Assignments of Error, and partially referenced in the Third Assignment, among other statutes, is R.C. § 2925.05(A)(2).
 {¶ 17} Such statute states:
 {¶ 18} "(A) No person shall knowingly provide money or other items of value to another person with the purpose that the recipient of the money or items of value use them to obtain any controlled substance for the purpose of violating section 2925.04
of the Revised Code or for the purpose of selling or offering to sell the controlled substance in the following amount:
 {¶ 19} "(1) If the drug to be sold or offered for sale is any compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, and hashish, or schedule III, IV, or V, an amount of the drug that equals or exceeds the bulk amount of the drug;
 {¶ 20} "(2) If the drug to be sold or offered for sale is marihuana or a compound, mixture, preparation, or substance other than hashish containing marihuana, an amount of the marihuana that equals or exceeds two hundred grams."
 I. {¶ 21} In the First Assignment, Appellant asserts that the Indictment as to Count Four is deficient.
 {¶ 22} The Indictment as to such count provides:
 {¶ 23} "On or about the month of August, 2003, at the County of Tuscarawas, State of Ohio, one Joey Wilson did knowingly provide money or other items of value to others, with the purpose that the recipient of the money or items of value use them to obtain a controlled substance, marijuana, in an amount exceeding two hundred grams, for the purpose of selling or offering to sell the marijuana, contrary to and in violation of Section2925.05(A)(2) of the Revised Code and against the peace and dignity of the State of Ohio, a felony of the third degree."
 {¶ 24} The argument concerning the Indictment is that the statute referenced in subdivision (2) states that the quantity of marijuana to be sold or offered for sale exceeds two hundred grams.
 {¶ 25} Here, the quantity involved greatly exceeded such amount (2630.2 grams Tr. 268) but Appellant contends that since neither the indictment nor the State's evidence indicated whether Bryan Wilson intended to sell in amounts more or less than two hundred grams, a required element of the crime, is lacking.
 {¶ 26} We disagree.
 {¶ 27} The holding in State v. Sway (1984),15 Ohio St.3d 112, is applicable in stating:
 {¶ 28} "The canon in favor of strict construction of criminal statutes is not an obstinate rule which overrides common sense and evident statutory purpose. The canon is satisfied if the statutory language is given fair meaning in accord with the manifest intent of the General Assembly. United States v. Moore
(1975), 423 U.S. 122, 145, 96 S.Ct. 335, 346, 46 L.Ed.2d 333;United States v. Brown (1948), 333 U.S. 18, 25-26,68 S.Ct. 376, 379-380, 92 L.Ed. 442."
 {¶ 29} The court in such case in referencing R.C. §2925.05(A) provides that the purpose of providing money is to violate R.C. § 2925.04 or for the purpose of selling or offering to sell.
 {¶ 30} R.C. § 2925.04 prohibits the engaging in any part of the production of a controlled substance. The production would include distribution.
 {¶ 31} Appellant's First Assignment is therefore rejected.
 II., IV. {¶ 32} We shall address the Second and Fourth Assignments of Error as both assert that the evidence was insufficient for conviction as to Counts Four and Nine and against the manifest weight of such evidence.
 {¶ 33} In reviewing the records to the manifest weight of the evidence, a reviewing court is to examine the entire record, weigh the evidence and draw all reasonable inferences, consider the credibility of the witnesses and determine Awhether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. State v. Martin (1983),20 Ohio App.3d 172. See also, State v. Thompkins (1997),78 Ohio St.3d 380. The discretionary power to grant a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. Because the trier of fact is in a better position to observe the witnesses= demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230.
 {¶ 34} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991)61 Ohio St.3d 259. The weight to be given evidence and the determination of credibility of witnesses are issues for the trier of the facts, not the reviewing court. State v. Jamison
(1990), 49 Ohio St.3d 182, cert. denied, 498 U.S. 881. This second assignment also questions the appellee's arguments as to complicity.
 {¶ 35} We have stated the provisions of R.C. § 2925.05(A)(2) in our review of the First Assignment of Error and Revised Code §2923.03 provides in part;
 {¶ 36} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 37} "(1) Solicit or procure another to commit the offense;
 {¶ 38} "(2) Aid or abet another in committing the offense;
 {¶ 39} "(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;"
 {¶ 40} "* * *"
 {¶ 41} "(B) It is no defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender."
 {¶ 42} The facts in the case sub judice differ from those inState v. O'Brien (1987), Ohio St.3d 122, and this Court's opinion, relying thereon, in State v. Conley (2005), (5th
Dist.) Case No. 03-CA-18, leave to appeal and cross-appeal denied by Ohio Supreme Court. In State v. Conley, supra, the indictment and jury instructions were defective; such is not the case here.
 {¶ 43} The Ohio Supreme Court in State v. Johnson (2001),93 Ohio St.3d 240, stated:
 {¶ 44} "Participation in criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed."
 {¶ 45} "To support a conviction for complicity by aiding and abetting, the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal; such intent may be inferred from the circumstances surrounding the crime."
 {¶ 46} The record in the case sub judice, if accepted, would clearly indicate participation in the financial distribution to obtain and transfer marijuana to Tuscarawas County for distribution.
 {¶ 47} Between the testimony of the undercover officer as to the delivery of funds, the postal records of transfers to Appellant (Tr. 89-97), and Appellant's conduct and statements upon the officer's arrival in New Mexico, sufficient evidence was presented to sustain both sufficiency and manifest weight.
 {¶ 48} Example of evidence are:
 {¶ 49} "Q: What happened when Joey came to the motel?
 {¶ 50} "A: Joey pulled in the parking lot of the motel, stepped out of his vehicle carrying a Wal Mart plastic sack."
 {¶ 51} "* * *"
 {¶ 52} "A: He walks towards Clint Robinson and myself. Clint Robinson was in the parking lot I was standing. I walked up to the vehicle with Clint Robinson. He handed the Wal Mart sack to Clint Robinson. The three of us walked back into the motel and into our motel room."
 {¶ 53} "* * *"
 {¶ 54} "Q: Was there any conversation between Clint Robinson and Joey Wilson?
 {¶ 55} "A: Yes.
 {¶ 56} "Q: By the tone of their conversation did you come to any conclusion whether they had known each other before?
 {¶ 57} "A: Yes. From the conversation I gathered they'd known each other for a while."
 {¶ 58} "* * *"
 {¶ 59} "A: After we got into the motel room Clint Robinson pulled on the packages out of — one of the packages of suspected marijuana out of the Wal Mart bag. I also took hold of the Wal-Mart bag and brought it over to the bed, emptied the contents so that we could inspect all the packages of suspected marijuana.
 {¶ 60} "Q: And describe what you found in that big bag.
 {¶ 61} "A: In that big bag were individually shrink wrapped bricks of marijuana."
 {¶ 62} "* * *"
 {¶ 63} "Q: Okay. Now, eventually that was some discussions in your presence between Clint and Joey about other matters.
 {¶ 64} "A: Correct.
 {¶ 65} "Q: Was there any discussion about the transactions?
 {¶ 66} "A: Previous?
 {¶ 67} "Q: Yes, previous transaction.
 {¶ 68} "A: There were.
 {¶ 69} "Q: What was the discussion between Joey and Clint?
 {¶ 70} "A: They were both basically reminiscing about the previous arrangements and the previous people that Bryan sent down.
 {¶ 71} "Q: Okay. And did Joey seem to indicate he knew what Clint was talking about?
 {¶ 72} "A: Yes.
 {¶ 73} "Q: What specifically did Joey say his involvement in those previous instances were?
 {¶ 74} "A: Basically same as when I went down. He'd have the stuff, give it to the — whoever Bryan sent down, then he'd make the return trip.
 {¶ 75} "Q: All right. Now, was there any specific discussion between Clint and Joey about future transactions?
 {¶ 76} "A: Yes.
 {¶ 77} "Q: And what was that discussion?
 {¶ 78} "A: There was a couple discussions. One was Joey indicated that the main source for this marijuana had approximately a thousand pounds that he could sell or unload if we came up with the money or if Bryan came up with the money.
 {¶ 79} "Q: Okay. And anything further about future deals?
 {¶ 80} "A: He also indicated that a kilo of cocaine could be purchased for a price and without looking at my notes I'm unclear of the numerics of that price.
 {¶ 81} "* * *"
 {¶ 82} "Q: And did he say anything upon his leaving other than good-bye? If you recall.
 {¶ 83} "A: Other than making arrangements, open ended arrangements with Clint and myself on future transactions, upon finding out the price of the marijuana and the price of the cocaine Clint was setting up an open ended transaction for me and him to participate in cutting Bryan out of the loop."
 {¶ 84} We find that the evidence as accepted by the court supported the convictions of both statutes.
 {¶ 85} Assignments of Error Two and Four are denied.
 III. {¶ 86} The Third Assignment asserts lack of venue in Tuscarawas County.
 {¶ 87} Revised Code § 2901.12 provides in part:
 {¶ 88} "(A) The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed.
 {¶ 89} "(B) When the offense or any element of the offense was committed in an aircraft, motor vehicle, train, watercraft, or other vehicle, in transit, and it cannot reasonably be determined in which jurisdiction the offense was committed, the offender may be tried in any jurisdiction through which the aircraft, motor vehicle, train, watercraft, or other vehicle passed.
 {¶ 90} "(C) When the offense involved the unlawful taking or receiving of property or the unlawful taking or enticing of another, the offender may be tried in any jurisdiction from which or into which the property or victim was taken, received, or enticed.
 {¶ 91} "(D) When the offense is conspiracy, attempt, or complicity cognizable under division (A)(2) of section 2901.11 of the Revised Code, the offender may be tried in any jurisdiction in which the conspiracy, attempt, complicity, or any of its elements occurred. If an offense resulted outside this state from the conspiracy, attempt, or complicity, that resulting offense also may be tried in any jurisdiction in which the conspiracy, attempt, complicity, or any of the elements of the conspiracy, attempt, or complicity occurred.
 {¶ 92} "(E) When the offense is conspiracy or attempt cognizable under division (A)(3) of section 2901.11 of the Revised Code, the offender may be tried in any jurisdiction in which the offense that was the object of the conspiracy or attempt, or any element of that offense, was intended to or could have taken place. When the offense is complicity cognizable under division (A)(3) of section 2901.11 of the Revised Code, the offender may be tried in any jurisdiction in which the principal offender may be tried.
 {¶ 93} "(F) When an offense is considered to have been committed in this state while the offender was out of this state, and the jurisdiction in this state in which the offense or any material element of the offense was committed is not reasonably ascertainable, the offender may be tried in any jurisdiction in which the offense or element reasonably could have been committed.
 {¶ 94} "(G) When it appears beyond a reasonable doubt that an offense or any element of an offense was committed in any of two or more jurisdictions, but it cannot reasonably be determined in which jurisdiction the offense or element was committed, the offender may be tried in any of those jurisdictions.
 {¶ 95} "(H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:
 {¶ 96} "(1) The offenses involved the same victim, or victims of the same type or from the same group.
 {¶ 97} "(2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.
 {¶ 98} "(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.
 {¶ 99} "(4) The offenses were committed in furtherance of the same conspiracy.
 {¶ 100} "(5) The offenses involved the same or a similar modus operandi.
 {¶ 101} "(6) The offenses were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination."
 {¶ 102} Revised Code 2901.11 states in part:
 {¶ 103} "(A) A person is subject to criminal prosecution and punishment in this state if any of the following occur:
 {¶ 104} "(1) The person commits an offense under the laws of this state, any element of which takes place in this state.
 {¶ 105} "(2) While in this state, the person attempts to commit, or is guilty of complicity in the commission of, an offense in another jurisdiction, which offense is an offense under both the laws of this state and the other jurisdiction, or, while in this state, the person conspires to commit an offense in another jurisdiction, which offense is an offense under both the laws of this state and the other jurisdiction, and a substantial overt act in furtherance of the conspiracy is undertaken in this state by the person or another person involved in the conspiracy, subsequent to the person's entrance into the conspiracy. In any case in which a person attempts to commit, is guilty of complicity in the commission of, or conspires to commit an offense in another jurisdiction as described in this division, the person is subject to criminal prosecution and punishment in this state for the attempt, complicity, or conspiracy, and for any resulting offense that is committed or completed in the other jurisdiction.
 {¶ 106} "(3) While out of this state, the person conspires or attempts to commit, or is guilty of complicity in the commission of, an offense in this state."
 {¶ 107} "* * *"
 {¶ 108} "(D) When an offense is committed under the laws of this state, and it appears beyond a reasonable doubt that the offense or any element of the offense took place either in this state or in another jurisdiction or jurisdictions, but it cannot reasonably be determined in which it took place, the offense or element is conclusively presumed to have taken place in this state for purposes of this section.
 {¶ 109} "(E) When a person is subject to criminal prosecution and punishment in this state for an offense committed or completed outside of this state, the person is subject to all specifications for that offense that would be applicable if the offense had been committed within this state.
 {¶ 110} "(F) Any act, conduct, or element that is a basis of a person being subject under this section to criminal prosecution and punishment in this state need not be committed personally by the person as long as it is committed by another person who is in complicity or conspiracy with the person.
 {¶ 111} "(G) This section shall be liberally construed, consistent with constitutional limitations, to allow this state the broadest possible jurisdiction over offenses and persons committing offenses in, or affecting, this state."
 {¶ 112} In State v. Gribble (1970), 24 Ohio St.2d 85, such court advised:
 {¶ 113} "Venue of crime need not be proved in express terms, provided it be established by all facts and circumstances, beyond reasonable doubt, that crime was committed in county and state alleged. Syllabus by the Court."
 {¶ 114} In this case, evidence was presented as to the transference of funds to Appellant from Tuscarawas County with the arrest upon arrival of the marijuana in Newcomerstown.
 {¶ 115} Clearly, sufficient proof of venue from the facts and circumstances warranted trial in Tuscarawas County.
 {¶ 116} Appellant's Third Assignment is overruled.
 {¶ 117} This cause is affirmed at Appellant's costs.
Hoffman, P.J. concurs separately Edwards, J. concurs separately